WASYL MIKULA, PLAINTIFF IN ERROR, v. DELAWARE,
LACKAWANNA AND WESTERN RAILROAD COMPANY,
DEFENDANT IN ERROR.

Argued March 16, 1909—Decided June 14, 1909.

A plaintiff while engaged as a laborer in a tunnel, which was being
excavated through solid rock by means of blasting, was injured
in said tunnel after a blast, by the falling of a stone from the
roof hitting him upon the head.   It was proved that an inspec-
tion of the tunnel had been made according to approved methods.
The plaintiff testified in his own behalf that after being ordered
out of the tunnel preparatory to the firing of the blast the fore-
man, after the blast, but how long after he could not tell, it
might be five minutes, ordered all back to work; that he stayed
out maybe ten minutes and maybe more, he could not tell; that
the drillers charged with making the inspection went in first,
and he and his fellow-workmen followed them.   There was also
evidence that such inspections would occupy from ten to forty
minutes; that a big blast might take half an hour, but the usual
blast ten to fifteen minutes.   *Held*, that the mere falling of the
stone after inspection was not proof of negligence; that the infer-
ence of improper inspection did not arise from the indefinite evi-
dence of the plaintiff as to the time he was out of the tunnel
to make it a jury question, and that if the plaintiff returned into
the tunnel immediately following those charged with the inspec-
tion, he must either have assumed the risk of danger without an
inspection, or by his negligence in entering too soon to have
contributed to the injury, it being shown that he had been for
six months in the employment of the defendant performing the
same kind of work, and that a direction of a verdict for the de-
fendant was proper.

On error to the Supreme Court.

For the plaintiff in error, *Herbert Clark Gilson.*

For the defendant in error, *Max M. Stallman* and *William D. Edwards.*

The opinion of the court was delivered by

VOORHEES, J. This action was brought in the Supreme Court to recover for injuries to plaintiff while in defendant's employ. A verdict was directed for the defendant. The plaintiff brings error.

The defendant was engaged in the construction of a railroad tunnel through Bergen Hill. The plaintiff, forty-five years old, had been employed there as a laborer for about five months. The tunnel was excavated mainly through solid rock, by means of blasting. The duty of the plaintiff was to load upon cars the stone which had been thrown out by the blasts. When a blast was about to be fired the workmen were notified and went out of the tunnel. After a blast it was the custom of the foreman and drill-runners to enter the tunnel and make an inspection of the sides and roof to see if any rocks or stones remained in place but had been loosened and had become dangerous and likely to fall, and to bar down any rock so loosened. The method of inspection was to strike the sides and roof with tamping bars; the sound thus produced indicating whether the portions of rock so struck had become loose.

The accident in which the plaintiff was injured is described by him, and he is the only witness, as follows: He and his fellow-workmen had withdrawn from the tunnel preparatory to the firing of a blast; after the blast, how long after he cannot tell, maybe five minutes, the foreman ordered all back to work. He stayed outside maybe ten minutes, maybe more, he cannot tell. The foreman went in and the drillers followed; inside of a minute all went back; the drillers went in first and the plaintiff and his fellow-workmen followed them. As soon as the explosion occurred the foreman ordered the drillmen back and all the men followed. The plaintiff says he was injured at three o'clock P. M. While he was piling up stones on

cars, a couple of stones fell in front of him and one on his head. There was an inspection of the tunnel after the blast had been fired.

There was no direct evidence on the part of the plaintiff to show that this inspection was not carefully made, but it was argued that his testimony that he was ordered back by the foreman perhaps five minutes after the explosion, but cannot tell how long it was, and that he stayed outside maybe ten minutes, maybe more, but cannot tell how long, is sufficient to raise a jury question whether a proper inspection could be made in that time. The plaintiff produced two witnesses who describe the usual method of inspection, which agrees substantially with the method actually used. They both agree that an inspection would occupy from ten to forty minutes. One says after a big blast it might take a half hour, but of the usual blast ten to fifteen minutes would be sufficient. This same witness says that there are more or less small loose pieces left even after the tamping.

It is further asserted that the fall of the stones indicates that the defendant did not use due care to provide a safe place to work in, and also together with plaintiff's evidence above referred to shows that the inspection was not properly made.

The rule of law requires such inspection as ordinary prudence dictates by the use of practical tests known to the master or so commonly used for the purpose that he might be presumed to have knowledge of them. *Atz* v. *Manufacturing Company*, 30 *Vroom* 41; *McGrath* v. *Delaware, Lackawanna and Western Railroad Co.*, 40 *Id.* 331; *Randolph* v. *New York Central and Hudson River Railroad Co.*, *Id.* 420.

The proof is uncontradicted that the defendant had a complete scheme of inspection which in this instance was carried out by means of the foreman and some eight drill-runners, not only as to the part of the tunnel within the influence of the blast, but it also showed that the walls and roof at the particular place where plaintiff's accident occurred had been inspected, and that such inspection revealed no loose stone. The inspection occupied from forty to fifty minutes. It is not con-

tradicted that the proper method of inspection was used and was the one in general use. Both sides concede this. The mere falling of the stone does not prove negligence, especially when the witnesses admit, and common experience indicates, that inspection cannot be infallible. The place of work was one of inherent danger. We cannot infer that the master's inspection was improper from the indefinite evidence given by the plaintiff as to the time he was out of the tunnel. To allow a jury to consider it for that purpose would be granting them permission to find a verdict upon mere conjecture and speculation. The blast occurred at two-thirty-four, and plaintiff fixes time of accident right after three o'clock. He does not say that he actually went to his work at the place where the accident occurred at the time that the laborers followed the drillmen in. The testimony on the part of the defendant, uncontroverted, is that the laborers did not come in to the place of inspection until after the process of barring down had been completed, but were working out toward the portal where it was safe. The loose stone, if there was one, was not discovered by the inspection which was the method in ordinary use and such as the law required the master to make. The master is not liable for injury occurring from a defect not disclosed by such inspection. *Atz* v. *Manufacturing Company, supra.*

The motion to direct a verdict was made upon the grounds that the defendant had made a proper inspection, which has been considered, and also that the plaintiff by his negligence contributed to the accident.

The drillers, whose duty it was to inspect, were ordered in after the explosion. There is no testimony that the laborers were so ordered in immediately after the explosion. The only testimony on the subject is that of the plaintiff to this effect, through an interpreter:

"*Q.* Then after the blast did he (plaintiff) go in again?

"*A.* The foreman ordered all back to work.

"*Q.* How long after the explosion did the foreman order him (plaintiff) to go back?

"*A.* I can't tell.

"*Q.* Was it a minute or half an hour?

"*A.* Maybe five minutes.

"*Q.* I want to know whether anybody went in    *   *   *
and inspected the tunnel while he (plaintiff) was waiting
around outside after the blast?

"*A.* He says the foreman went in and the men followed
him in. The people that drilled the hole went in there first.

"*Q.* How long before the foreman?

"*A.* Inside of a minute all went back."

And on cross-examination:

"*Q.* Then after this smoke got out the drill-runners went
into the tunnel—the drillmen that make the holes?

"*A.* They went in first and we followed them.

"*Q.* Well, how long after the drillmen went in did the
plaintiff follow them in?

"*A.* All workmen went in together right after, following the
drillers.

"*Q.* Did you always do that all the time you worked there?

"*A.* As soon as the explosion the *foreman ordered the drill-
men,* and all men followed right back to work."

It thus appeared that orders to go in were given to the
drillers immediately after the explosion, and the laborers fol-
lowed right after the drillers without orders. If the plaintiff
went back to the place where he was injured as soon as he
says he did he failed to give the defendant a reasonable time
to inspect, and must be said either to have assumed the risk
of danger without an inspection, or by his negligence in enter-
ing too soon to have contributed to the injury. He must be
presumed, after six months' experience in this employment at
the same place, performing the same kind of work, to know
that inspections took place after every blast, that they were
intended to secure safety for the men, that they were made by
the drillmen and what was the approximate length of time
required for their completion.

The judgment must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, REED, BERGEN, VOORHEES, MINTURN, BOGERT, GRAY, DILL, J.J.   10.

*For reversal*—GARRISON, TRENCHARD, PARKER, VREDEN-BURGH, VROOM, J.J.   5.